KAUFHOLD GASKIN GALLAGHER LLP
JONATHAN B. GASKIN, ESQ. (SBN 203625)
Email: JGaskin@KaufholdGaskin.com
QUYNH K. VU, ESQ. (SBN 286631)
Email: QVu@KaufholdGaskin.com
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4620
Facsimile: 415-874-1071

Attorneys for Zapier, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

ZAPIER, INC.,
Plaintiff,

vs.

ZOOM VIDEO COMMUNICATIONS, INC.,
Defendant.

Case No.

**AMENDED COMPLAINT:**

1. **15 U.S.C § 1125**
2. **Common Law Trademark Infringement**
3. **California Business & Professions Code § 17200**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. Plaintiff Zapier, Inc. ("Zapier") brings this lawsuit against Defendant Zoom Video Communications, Inc. ("Zoom") for illegally infringing on Zapier's trademarks, usurping and trading on Zapier's goodwill and reputation, and unfairly and unlawfully competing with Zapier as follows:

2. Zapier (which rhymes with "happier") is an internationally-prominent technology company specializing in online automation tools that connect and integrate third party internet applications ("apps") and application services. Zapier does so through Zapier specific workflow(s) that a user of the Zapier software can create in order to connect or trigger certain actions among different third-party apps that are integrated through Zapier – which automated workflow(s) Zapier and the rest of the world refer to as a "Zap" or "Zaps." As an example, a user can create a Zap integrating multiple apps so that the action of a person filling out a form on that user's website will autonomously trigger sending a welcome email from that user's email account to the person that filled out the form and also send the data that the form gathered onto a spreadsheet. While combinations users can use to create Zaps are endless, each Zap is always an automated workflow on the Zapier platform.

3. Zoom is an internationally prominent technology company specializing in audio and visual communications over the internet.

4. As long ago as 2015, Zoom partnered with Zapier so that Zapier would provide Zaps that allowed Zoom's and Zapier's users to integrate the Zoom app with other third-party apps. In its September 9, 2015 Special Announcement touting its new partnership with Zapier, Zoom extolled the virtues of integrating Zoom with other apps through Zapier and closed the announcement with "Happy Zooming and Zapping." (https://blog.zoom.us/zoom-and-zapier/). Since that time Zapier and its users have created many hundreds of Zaps to integrate Zoom with other apps. Accordingly, as demonstrated above, Zoom is completely aware of Zapier's use of "Zap" and "Zaps" and the overlap with "Zapp." Zoom's own website currently contains instructions on how to create a Zap and integrate third party apps with Zoom through Zaps.

(https://support.zoom.us/hc/en-us/articles/205260649-How-To-Use-Zapier) ("With Zapier, you build simple automations called Zaps that work in the background and automate your work. For example, you can create a Zap that automatically subscribes new Zoom Webinar registrants to a MailChimp list. Or create a Zap that registers a contact for a Zoom Webinar whenever a form is completed or a PayPal purchase is completed").

5. Following the worldwide Covid-19 pandemic, and the dramatic shift from in-person communications to remote working and distanced interactions, Zoom has risen to much greater visibility. Zoom recently completed an initial public offering, grew significantly, and is now attempting to expand its business into new areas.

6. Specifically, Zoom went public on April 19, 2019 at $36.00 per share and closed that day at approximately $62.00 per share. As of Friday, October 23, 2020 Zoom shares had rocketed to a closing price of $511.52 with an astronomical 653.28 price to earnings (P/E) ratio. This sky-high P/E ratio requires an extremely high growth rate to justify the current stock price and Zoom needs "to continue introducing new products" to grow the company's business in new areas to meet these lofty expectations.

7. One of these new business areas is described by Zoom as "Apps in Zoom" – "apps that you can use within the Zoom platform to help improve productivity and create more engaging experiences." These "improved productivity" and "more engaging experiences" are achieved, in part, by integrating, via the Zoom platform, Zoom with third party apps, such as Slack, Dropbox, Salesforce, and SurveyMonkey. Such connections and integrations between third party apps, including Zoom and Slack, Dropbox, Salesforce and SurveyMonkey, are Zapier's core value and business – and have long been referred to by Zapier, Zoom, and millions of other companies, users, reporters, and others as "Zaps."

8. As such, it was an immediate problem for Zapier – and for consumers – that Zoom, in announcing that it would be starting the new business area "Apps in Zoom" also announced that it would be calling this "Apps in Zoom" integration business: "Zapps." To be clear, these are not Zoom apps – the Zoom app is called "Zoom." These are not new apps Zoom

is creating. These so-called "Zapps" are third party apps Zoom is integrating – including more than half that are already integrated with Zoom via Zaps by Zapier. Instead of calling its new integration of third-party apps "Apps in Zoom" or the "Zoom App Marketplace" (which would be industry standard), Zoom is blatantly ripping off the decade of goodwill and premier reputation built by Zapier for its Zaps by using the phonetically identical and alternately spelled term "Zapps."[1]

9. Aside from Zapier (and Zoom itself), millions of people worldwide over the past decade have used the term "Zaps" to describe Zapier's product and immediately associate it with Zapier. Occasionally third parties misspell and use "Zapps" when referring to Zapier's product. Zoom itself has used "Zapping" (with two p's) as a verb to describe the process of using Zapier's product.

10. Zapier was not alone in being astonished that Zoom would blatantly steal Zapier's trademarked name for its new business and attempt to expropriate Zapier's goodwill, reputation, and industry leading position in the app integration business. Simply put, people are already completely familiar with Zapier's Zaps and confused by Zoom's "Zapps." Hundreds of tweets and comments spread across the internet questioning how Zoom could use Zapier's product name and expressing confusion at Zoom's use of "Zapps." Some comments went so far as to ask if Zoom had bought Zapier.

11. Following Zoom's announcement, the CEO of Zapier reached out to the CEO of Zoom to try to resolve this outside the courts. However, Zoom's CEO never responded. Nor did anyone else from Zoom – forcing Zapier to take legal action.

12. While Zoom starting a new business is, of course, permissible, it is illegal for Zoom to misappropriate Zapier's trademarks and unfairly compete by infringing on Zapier's well established usage of "Zap" and "Zaps" through naming its new business the aurally identical

[1] There's little doubt that Zoom would (rightfully) sprint to court if Google or Microsoft had called their audio/visual communication products the aurally identical, but alternately spelled "ZoomM" instead of "Meet," and "Teams," or if Skype brought out an aurally identical "Szoom" product.

"Zapp." Zoom is not creating or selling new apps – it is integrating third party apps. Zoom has no goodwill, no history, and no viable reason for using the term "Zapps" – other than to illegally extract value from Zapier's trademarks, reputation, and goodwill. Even if Zoom's business was entirely different and did not involve integrating third party apps, Zoom's use of the aurally identical term "Zapps" in a new and unproven business across a widely used audio/visual communications platform would inevitably unfairly dilute and harm Zapier's well-respected and time-proven market-leading business of providing app integration Zaps.

13. Zapier seeks to enjoin Zoom from using the term "Zapp" or any other identical sounding infringements on its trademarks and to recover damages caused by Zoom's unfair competition and injury caused by Zoom's dilution of Zapier's goodwill and reputation.

## II. THE PARTIES

14. Plaintiff Zapier, Inc. is a Delaware corporation having its registered address in San Francisco, California.

15. Defendant Zoom Video Communications, Inc. is a Delaware corporation having its principal place of business in San Jose, California.

## III. JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

16. This Court has subject matter jurisdiction under 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1338(a), and has jurisdiction over all related state law claims under 28 U.S.C. § 1338(b), supplemental jurisdiction under 28 U.S.C. § 1367(a) and the doctrine of pendent jurisdiction.

17. Venue is proper in this district under 28 U.S.C. § 1391(b) because both Zapier and Zoom are residents of the district and a substantial part of the events giving rise to the action occurred in this district.

18. This action is assigned to the San Francisco Division because the substantial part of the events which give rise to the claim occurred in San Francisco County.

## IV. FACTS

### A. Plaintiff Zapier's Trade Name, Service Mark, and Trademark

19. Zapier, first incorporated under the name Snapier LLC in 2011, launched its application integration product to the public in May 2012. Zapier is a technology company that creates automated workflows, allowing information between users' web apps to move and flow automatically. Its core value and business is connecting and integrating third-party apps for its users via software links through its platform known as "Zaps."

20. Zapier is a well-known technology company with international reach. Zapier has over seven million registered users across all 50 U.S. states and 199 countries and territories.

21. Users can use Zapier to connect the applications they use every day and can configure an automated information flow, called a "Zap," between their various apps and services. For example, Zapier's service allows users to create a Zap so that the action of a customer registering for a meeting on Zoom will trigger sending of a welcome email to the customer as well as sending the customer data to a payment application and billing the customer for his/her registration fee. This Zap integrates the user's Zoom, email, and billing applications.

22. Zapier has continuously used the term "Zap" (and the plural "Zaps") since 2011 to describe the Zapier specific workflow that a user creates to connect or trigger certain actions among different third-party apps.

23. Zapier offers integrations for over 2,900 applications, including Twitter, Google Sheets, Gmail, Facebook, Salesforce, Shopify, Dropbox, Instagram, LinkedIn and Zoom. Subscribers of Zapier's service can create nearly endless combinations of Zaps using Zapier's platform and technology.

24. Zapier uses the term "Zap" throughout its website and marketing materials, including on its landing page, its sign-up process, and subscriber emails. When a user signs up for a Zapier account, she is first prompted to create a Zap. Attached as Exhibit 1 are examples of Zapier's webpage and subscriber emails.





# Not sure where to start,

**That's okay!** If you want to learn more about what Zapier can do for you, try one of these Zap templates. These are pre-made Zaps where we've done most of the heavy lifting and will let you see an example of how a Zap works.

Get a daily SMS message with the day's weather.
Try this Zap

Schedule weekly Slack messages to send reminders to your team.
Try this Zap

Tomorrow, we'll show you how to connect the apps you use most—and teach you how to create a customized Zap that does your busywork for you.

## Zaps connect the apps you use every day

TRIGGER
When I get a new email in Gmail
ACTION
Copy the attachment from Gmail to Dropbox
ACTION
Alert me in Slack about the new Dropbox file

**Start workflows from any app**
Pick a trigger that sets your Zap into motion.

**Finish routine tasks automatically**
Zaps complete actions, while you solve more important problems.

**Simple, fill-in-the-blank setup**
Point, click, automate. Go from idea to workflow in minutes.

COMPLAINT



25. Zapier is an extremely popular and successful company and its integrations are ubiquitous throughout the technology world – as is the association of its automated workflow integrations with Zapier's distinctive term for those integrations: "Zap."

26. Indeed, in 2015, Zoom and Zapier announced that they were integration partners, using Zapier's Zaps to increase Zoom's user functionality through software integrations such as the Zap that automatically adds Zoom webinar registrants to the Salesforce application as leads or the Zap that automatically adds new Eventbrite attendees or Gmail email subscribers to Zoom as webinar registrants.

27. Zoom's own website describes its integration with Zapier and repeatedly uses Zapier's proprietary term "Zap" to refer to Zapier's product, including:

a. "you build simple automations called Zaps"

b. "you can create a Zap that automatically subscribes new Zoom Webinar registrants to a MailChimp list"

c. "Popular Zaps Using Zoom"

d. "Every Zap has a trigger app"

e. "Follow the steps to finish creating your Zap and test your Zap"

Attached as Exhibit 2 is a true and correct copy of Zoom's "How to Use Zapier" webpage. Part of it is reproduced below:

zoom Help Center SALES PLANS JOIN A MEETING CONTACT SUPPORT

Zoom Help Center > Integration > Integrations

Getting Started
Audio, Video, Sharing
Meetings & Webinars
Zoom Phone
Account & Admin
Zoom Rooms
H.323/SIP
Messaging
Integration
On-Premise
Training

Related articles

Getting started with webinar
Live training webinars
Virtual Background
Zoom technical support
Frequently asked questions for admins

How To Use Zapier

Overview

With Zapier, you build simple automations called Zaps that work in the background and automate your work. For example, you can create a Zap that automatically subscribes new Zoom Webinar registrants to a MailChimp list. Or create a Zap that registers a contact for a Zoom Webinar whenever a form is completed or a PayPal purchase is completed.

Every Zap has a trigger app, that kicks off the automation and causes an action to happen in another app. Zapier is the connection between these apps and allows you to connect and automate the tools you use to run your business.

This article covers:

- Triggers with Zoom
- Actions with Zoom
- Configuring Zoom and Zapier
- Popular Zaps Using Zoom

28. The term and service mark "Zap" has been featured in over 200 publications, blogs, and/or websites to refer to Zapier's automation service. As a small sampling, Zapier and its service mark "Zap" has been recognized and written about in Forbes, Business Insider, Yahoo Finance, PCMag, Fast Company, Hacker Noon, LifeWire, and ComputerWorld. Zapier's zap has been discussed by the press as well as users in community forums:

a. "One paid Zoom account bonus is that you can post Zoom meeting links to Slack automatically. . . Having a Pro account means you have access to the Zoom API so you can use tools like Zapier Zap automation to get notifications for Zoom straight to your Slack channel." (Lifewire, March 30, 2020)

b. Listed as a top productivity tool for entrepreneurs by Forbes: "If you intend to save a file in Google Drive you can create a zap and upload it on Zapier." (Forbes, January 23, 2020)

c. Reddit user asking: "What Zapier Zap integration do you wish existed, but does not yet?" (Reddit, Jan 8, 2018)

29. Thousands of third parties have discussed and millions of users have used Zapier's "Zaps" at length in the decade since Zapier started.

30. Zapier's well-known, highly respected international reputation and substantial goodwill in the "Zap" mark are of great value to Zapier. Zapier will continue to use the "Zap" mark in connection with its service and automation of app integrations. Zapier has spent significant funds protecting its "Zap" mark, including purchasing the domains "Zap.com" and "Zappier.com"[2] to go along with "Zapier.com.[3]"

---

[2] "Zapp.com" is owned by a venerable international metalworking business founded in Germany by a Mr. Zapp in 1701. "Zapps.com" is owned and used by a test preparation company.

[3] Zapier (which rhymes with "happier") uses the "Zapier" spelling because it contains the term "api" (short for "application programming interface") which is a core component of Zapier's application integration processes.

**B. Zoom's Infringing Use of the "Zap" Mark**

31. After partnering with Zapier in 2015 and utilizing Zapier's integration Zaps for years, Zoom very recently decided to internally build its own product that would integrate third-party apps into the Zoom platform.

32. On October 14, 2020, at its developer conference, Zoom announced that it was launching "Zapps" to enable third party developers to create and distribute apps in the Zoom marketplace for use and integration on Zoom. Zoom stated that "Zapps bring best of breed applications into the Zoom experience for seamless productivity and engaging experiences." Zoom described this as "Zapps (Apps in Zoom)." Zoom also announced that it would launch its "Zapp" product by the end of 2020 and that it was actively developing the business now. Attached as Exhibit 3 is a true and correct copy of Zoom's announcement of its "Zapp" product.

33. Zapier's Zaps and Zoom's "Zapps" operate within the same market space. Zapier's Zaps connect and integrate third-party applications to help users with their workflow and thus enhance productivity. Zoom's "Zapp" integrates Zoom's platform with third party applications for "seamless productivity" according to Zoom. Thus, Zoom's "Zapp" is phonetically identical to, spelled similarly to, and competes with Zapier's Zap.

34. The term "Zapp" is a close replica or colorable imitation of Zapier's distinctive "Zap" mark and is confusingly similar and identical phonetically and in appearance to the "Zap" mark. The overall commercial impression conveyed by the term "Zapp" is essentially identical and confusingly similar to Zapier's "Zap" mark.

35. Consumers instantly highlighted the similarity of Zapp with Zap and the confusing nature of the marks with comments such as:

**Brett Franklin** @BrettFranklin_ · Oct 14
Hmm,,, a little confusing between @zapier's zaps and now @zoom_us's zapps

**Martin H. Normark** @MartinHN · Oct 15
So @zoom_us introduces Zapps. Where have I heard that name before? Oh yeah, the connections you set up in @zapier

**Norman Ma**
@darkhorse166

I have to admit, I initially confused Zapps with Zapier.

**David Barnard** @drbarnard · Oct 14
Zapps is a terrible name for Zoom to pick. @zapier has been calling their automations Zaps for years. I immediately thought it was a Zapier partnership (or acquisition). I smell a trademark letter and a quick rebrand. /cc @wadefoster

**Leon Hitchens** 🎃
@Leonhitchens

Zapps? Like zaps from Zapier?

> **Ryan Hoover** @rrhoover · Oct 14
> BIG announcement from Zoom producthunt.com/posts/zapps

5:20 PM · Oct 14, 2020 · Twitter for iPhone

**Vlad A. Ionescu**
@VladAIonescu

At first I thought this is a Zapier integration 😄

Zapier workflows are called Zaps

This is going to confuse people

> **Ryan Hoover** @rrhoover · Oct 14
> BIG announcement from Zoom producthunt.com/posts/zapps

1:52 PM · Oct 14, 2020 · Twitter for Android

36. Attached as Exhibit 4 are true and correct copies of some of the tweets and comments by consumers comparing the similarity and confusing nature of "Zapp" with Zap in the immediate wake of Zoom's announcement.

37. Zoom improperly benefits from using this similar mark to tie its new and unproven product for application integration, "Zapps," with Zap – a proven application integration product that millions use for third-party application integration, including with Zoom.

38. The use of the confusingly similar (and aurally identical) mark by Zoom has caused and will continue to cause consumers to be confused. The unauthorized and infringing use by Zoom of the "Zapp" mark will, unless enjoined, cause damage and injury to Zapier's goodwill in its long-established Zap mark.

39. Zoom's use of "Zapp" will also dilute the strong brand of Zap by blurring its ownership and distinctiveness and connecting it to a new and unproven product over which Zapier has no control.

40. Zapier has been and will continue to be harmed and damaged as a result of the infringement on its mark.

**FIRST CLAIM FOR RELIEF**

**Federal Unfair Competition and Dilution (15 U.S.C. § 1125)**

41. Zapier re-alleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

42. Zapier is the senior user of the "Zap" mark. The "Zap" mark is famous and distinctive and is entitled to protection against dilution by blurring or tarnishment. The Zap mark is distinctive, has been used continuously and exclusively for years throughout the United States and the world to identify the Zapier's application integration service, Zapier has extensively and continuously advertised and publicized the Zap mark for years, and the Zap mark has a high degree of recognition among consumers and app developers.

43. Defendant Zoom commenced the use of the "Zapp" mark in commerce long after the "Zap" mark had become famous and distinctive without authorization from Zapier.

44. By using the similar and confusing "Zapp" mark in connection with its unproven app integration product, Zoom trades on the distinctive brand and recognition of the "Zap" mark which has been used for years to describe the distinctive best-in-class app integration process that Zapier provides and sells.

45. Zoom itself warns that its "new products may initially suffer from performance and quality issues." (Zoom 10Q for period ending July 31, 2020, at p.56).

46. Thus, the use of the confusing "Zapp" term dilutes and/or is likely to dilute the distinctive quality of the "Zap" mark and lessen the capacity of such mark to identify and distinguish Zapier's services. Zoom's use of "Zapp" in connection with an unproven, untested, and novel product involving app integration is also likely to tarnish the "Zap" mark and cause blurring in the minds of consumers around the distinctiveness of the "Zap" integration service and its exclusive association with Zapier, thereby lessening the value of the "Zap" mark as a unique identifier of Zapier and its service.

47. At all relevant times, Zoom had actual and direct knowledge of Zapier's prior use and ownership of the "Zap" mark. Zoom's conduct is therefore willful and reflects Zoom's intent to exploit the goodwill and strong brand recognition associated with the "Zap" mark.

48. By the acts described above, Zoom has intentionally and willfully diluted, and/or likely to dilute, the distinctive quality of the "Zap" mark in violation of the Lanham Act.

49. Zoom's wrongful acts will continue unless enjoined by this Court.

50. Zoom's acts have caused, and will continue to cause, irreparable injury to Zapier. Zapier has no adequate remedy at law and is thus is and will be damaged in amount not yet determined.

**SECOND CLAIM FOR RELIEF**

**Common Law Trademark Infringement**

51. Zapier re-alleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

52. Zapier has prior rights in the unregistered trademark and service mark "Zap."

53. Zoom has infringed or will infringe on the "Zap" mark by using the similar and confusing term "Zapp."

54. Zoom's use of "Zapp" has caused confusion and is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection or association of Zoom's Zapp with Zapier's Zap, or as to the origin, sponsorship, or approval by Zapier of Zoom's service and commercial activities.

55. Zoom's infringing activity enables it to benefit unfairly from Zapier's reputation and success, thereby giving Zoom's new, unproven, and untested product sales, use, and commercial value it would not have otherwise.

56. Prior to Zoom's use of the infringing mark, Zoom was aware of Zapier's business and had actual notice of the "Zap" mark used by Zapier – including republishing such mark(s) on behalf of Zapier.

57. Zoom's unauthorized use of the infringing mark is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship, or approval of the new "Zapp" product and/or to cause confusion or mistake as to any affiliation, connection, or association between Zapier and Zoom with respect to "Zapp," a new and unproven product. Indeed, such instances of consumer confusion have already occurred.

58. Zoom's infringement has been and continues to be intentional, willful, and without regard to Zapier's rights in the "Zap" mark.

59. Upon information and belief, Zoom will gain profits by virtue of its infringement of the "Zap" mark.

60. Zapier will suffer irreparable harm from Zoom's infringement insofar as its invaluable goodwill is being eroded by Zoom's continuing infringement. Zapier has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and app developers, and goodwill flowing from Zoom's infringing activities. Zapier is entitled to an injunction against Zoom's infringement of the "Zap" mark.

61. Unless enjoined, Zoom will continue its infringing conduct.

**THIRD CLAIM FOR RELIEF**

**Unfair Business Practices (California Business and Professions Code § 17200, *et seq.*)**

62. Zapier re-alleges and incorporates each and every allegation contained in the paragraphs above with the same force and effect as if said allegations were fully set forth herein.

63. The acts of Zoom described above constitute unfair competition through unlawful, unfair, or fraudulent business practices and/or unfair, deceptive, untrue, or misleading advertising, as defined by California Business & Professions Code § 17200, *et seq.*

64. Zapier has valid and protectable prior rights in the "Zap" mark. The "Zap" mark does not serve any function other than to identify Zapier as the source of the product and service. The mark is inherently distinctive, and through Zapier's long and continuous use, has come to be associated solely with Zapier.

65. Zoom's actions are likely to cause confusion as to the source of the services offered by Zoom and is likely to cause others to be confused or mistaken into believing that there is a relationship between Zoom and Zapier with respect to the Zapp product or that the Zapp product is affiliated with or sponsored by Zapier.

66. The above-described acts and practices by Zoom are likely to mislead or deceive the general public and therefore constitute unfair competition in violation of California Business & Professions Code § 17200, *et seq.*

67. The above-described acts also constitute unlawful acts in violation of the Lanham Act and are therefore, unlawful acts in violation of California Business & Professions Code § 17200, *et seq*.

68. Zoom acted willfully and intentionally in using the "Zapp" mark with full knowledge of Zapier's prior rights in the "Zap" mark and that it could cause confusion or mistake or deceive customers into believing that there is an affiliation between Zoom and Zapier with respect to the unproven product, "Zapp."

69. The unlawful and unfair business practices of Zoom described above present a continuing threat to, and are meant to deceive members of, the public in that Zoom will promote its unproven product by wrongfully trading on the goodwill of Zapier's "Zap" mark.

70. As a direct and proximate result of these acts, Zoom will profit from the strength of the "Zap" mark. Further, Zapier will be injured in fact and will lose market share, money, and profits, and such harm will continue unless Zoom's acts are enjoined by the Court. Zapier has no adequate remedy at law for Zoom's violation of Zapier's rights.

71. Zoom should be required to restore to Zapier any and all profits earned as a result of its unlawful and fraudulent actions, or to provide Zapier with any other restitutionary relief as the Court deems appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Zapier prays for relief as follows:

1. A temporary restraining order and orders preliminarily and permanently enjoining Zoom and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with it, and its parents, subsidiaries, divisions, successor, and assigns, from directly or indirectly infringing the "Zap" mark, from using "Zapp" as the term for its new application integration product, and from passing off Zapp as being associated with and/or sponsored or affiliated with Zapier;

2. Actual damages suffered by Zapier as a result of Zoom's unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;
3. An accounting of Zoom's profits;
4. A judgment trebling any damages award;
5. Punitive damages;
6. Restitutionary relief, including disgorgement of wrongfully obtained profits and any other appropriate relief;
7. Costs of suit and reasonable attorneys' fees;
8. Any other remedy to which Zapier may be entitled.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Zapier hereby demands a trial by jury on all issues raised by the Complaint.

Dated October 26, 2020

_/s/ Jonathan B. Gaskin________
KAUFHOLD GASKIN GALLAGHER LLP
Jonathan Gaskin
Quynh Vu
*Attorneys for Plaintiff Zapier, Inc.*